DAVID LEMERY v. GREAT NORTHERN RAILWAY COMPANY.[1]

April 26, 1901.

Nos. 12,331—(25).

**Railway—Passenger Alighting at Intermediate Station.**

Where a through passenger on a railway train, without objection by the company or its agents, alights from the train at an intermediate station for any reasonable and usual purpose, such station being one for the discharge and reception of passengers, he does not cease to be a passenger, and is entitled to the protection accorded to such by law.

**Same.**

But a through passenger on a through train, one that does not stop at intermediate stations to receive or discharge passengers, who leaves such train without the knowledge, consent, or invitation of the company at an intermediate station at which the train stops for some purpose incident to its operation and management only, abandons for the time being his relation as a passenger, and assumes all risks incident to his movements.

Action in the district court for Polk county to recover $20,000 for personal injuries. The case was tried before Watts, J., who directed a verdict in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*Grover & Massee*, for appellant.

*C. Wellington*, for respondent.

BROWN, J.

This is an action to recover damages for personal injuries alleged to have been caused by the negligence of the defendant. The court below directed a verdict for defendant, and plaintiff appeals from an order denying a new trial.

The facts in the case are practically undisputed, and as follows: On June 18 and 19, 1899, defendant ran an excursion train over its line of railroad from Park River, in North Dakota, to Duluth, this state, and return. Plaintiff was a passenger on such excursion, having purchased a round-trip ticket at Park River, his place of residence. The train was divided into two sections,

[1] Reported in 85 N. W. 908.

the first section on the return trip being a through train, not stopping at intermediate stations to receive or discharge passengers. On the return to Park River, on June 19, plaintiff was a passenger on the first section of the train. This section was made up of twelve cars,—one baggage car, eight day coaches, and three sleeping cars. Between the sleeping cars and the day coaches was a car occupied exclusively by a militia company, and guarded at each entrance, though it does not appear that passengers were prevented from passing through the car whenever necessary. At the time of entering the train on the return trip plaintiff took a seat in one of the day coaches, but subsequently passed to the rear of the train, through the militia car, into one of the sleepers. When the conductor came into the car collecting fares and taking up tickets, plaintiff discovered that he had lost his ticket, and the conductor required him to pay his fare, which he did. At the time of paying the fare plaintiff demanded of the conductor a receipt for the money. The receipt was not given. The conductor had no blank receipts with him; they being, as he said to plaintiff, at the other end of the train. After paying his fare, plaintiff remained in the sleeping car until the train arrived at Grand Rapids, this state, at which point he left the train to go upon the station platform, and in doing so received the injuries complained of.

His object in leaving the train, as we understand his testimony, was for two purposes: (1) To find the conductor and again demand a receipt for the fare paid him; and (2) to pass around the militia car to enter one of the day coaches, it being, as he now claims, his understanding that he would not be permitted to remain longer in the sleeper, and that the guards would not permit him to pass through the militia car. In alighting at the station, plaintiff fell between the steps of the car and the station platform,—at least such is his claim,—was shocked and stunned by the fall to such an extent that he was unable to get back upon the train before it started, and in consequence was injured.

Two specific acts of negligence are relied upon to sustain plaintiff's right to action—first, that the defendant failed in its duty to plaintiff as one of its passengers in not having the station

platform at Grand Rapids properly lighted at the time of the arrival of the train; and, second, that the station platform was negligently constructed, in that the outer edge thereof was at an unsafe and dangerous distance from the steps of the car. Other acts of negligence pleaded in the complaint are of no consequence or importance, for, unless the evidence establishes a right of recovery upon either of the grounds stated, the plaintiff must fail in the action.

The decisive question in the case resolves itself into one proposition, viz.: What duty did defendant owe plaintiff as a passenger on the train in question with respect to lighting the station platform at Grand Rapids, and with reference to the construction of its station platform at that point? As stated, this section of the excursion train was a through train, and did not stop at points between Duluth and Park River to receive or discharge passengers. It stopped at Grand Rapids for the purpose only of taking water. The trainmen did not announce or call out the station at the time of or before the train came to a standstill. The station platform was unlighted, and was very dark. , Plaintiff himself testified that he could not distinguish readily an acquaintance who spoke to him at the car platform. Plaintiff was in no manner, expressly or impliedly, invited to leave the train at the time he did. There was no occasion, so far as the record discloses, for him to do so, either to obtain a receipt from the conductor, or to enter one of the day coaches. His statement that some one informed him that the conductor left the train at that point has but little weight, inasmuch as he made no inquiry to learn the fact in that regard. At the arrival of the train at this station, the conductor was in the same car with plaintiff, and plaintiff could very readily have made inquiry of him, and also demanded his receipt. Instead of doing so, however, he attempted to alight from the train in the darkness. There is no claim that he had been ordered to leave the sleeping car, nor was he prohibited or prevented from passing through the militia car. He had passed through that car at least twice previous to the arrival of the train at Grand Rapids, and he made no effort to return to the day coach by way of that car.

83 M.—4

It is stated as the general rule in Alabama G. S. Ry. Co. v. Coggins, 32 C. C. A. 1, 88 Fed. 455, that where a through passenger, without objection by the company or its agents, alights from the train at an intermediate station, which is a station for the discharge and reception of passengers, for any reasonable and usual purpose, like that of refreshment, the sending of telegrams, or of exercise by walking up and down the platform, he does not cease to be a passenger, and retains the right to the protection accorded to such by the law.

This rule is sustained by the great weight of authority, and is not controverted by the defendant in this case, except that it contends it has no application to a through train that does not stop at intermediate stations to receive or discharge passengers. Appellant relies upon the rule to justify his conduct in leaving the train in question. If the rule is to be applied to all trains, whether through or local, it sustains him, and the case should have been sent to the jury, at least this branch of it.

But the rule is not as broad as appellant contends. There must, in the very nature of things, be a distinction between a through train carrying through passengers, and a local train stopping at all stations to receive and discharge passengers. As to the latter there is no question but that passengers may, for any legitimate purpose, alight from the train at any intermediate station at which the train stops to receive and discharge passengers, without relinquishing or abandoning their relation to the company as passengers. But as to a through train, carrying only through passengers, the passenger who leaves the train without the knowledge, consent, or invitation of the company, at an intermediate station at which the train stops only for some purpose in connection with its management and operation, as for the purpose of taking water or coal, and not to receive or discharge passengers, must be deemed to have abandoned his relation as a passenger, and to take upon himself for the time being all risks incident to his movements.

In the case of a local train, the company is bound to know that passengers may be received and discharged at all stations at which a train may stop for that purpose, and is required by the

rule to keep the approaches to the train in a safe condition for their egress and ingress. But as to a through train, there being no passengers to discharge and none to receive, a stopping of the train for some purpose connected with its operation creates no necessity for the exercise of vigilance in the matter of the attention to approaches to the train, and the company should not be held guilty of negligence in failing to do so. Of course, if a passenger leaves a through train with the consent and permission of the company or its agents, it would be the duty of the company to exercise the same degree of care as is required with respect to passengers on local trains.

This was not a local train, but a through train, and the plaintiff was a through passenger. The train did not stop at Grand Rapids to receive or discharge passengers; there was no invitation held out to plaintiff to leave the train at that station; there was no occasion for him to do so; and he must be taken to have assumed all risks incident thereto. There was not only no invitation, express or implied, to passengers to leave the train at this station, but the fact that the station platform was unlighted was in the nature of a warning to them to remain on board.

It is not necessary to consider any other questions in the case. In the view of the law as we have stated it, defendant was not negligent as to the plaintiff in not having the station platform at Grand Rapids properly lighted on the occasion in question, nor was it guilty of negligence as to him because of any defect in the construction of the station platform.

The order appealed from is affirmed.